**DYKEMA GOSSETT LLP**
J. Kevin Snyder (California State Bar No. 107509)
*ksnyder@dykema.com*
Gregory K. Jones (California State Bar No. 181072)
*gjones@dykema.com*
333 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone: (213) 457-1800
Facsimile: (213) 457-1850

Attorneys for CIT Bank, N.A. (f/k/a OneWest Bank N.A.)

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re

ALLA V. KOSOVA,

Debtor.

Case No.: 16-11907-LED

Chapter 11

**MOTION FOR ORDER CONVERTING OR DISMISSING CHAPTER 11 CASE; MEMORANDUM OF POINTS AND AUTHORITIES**

Hearing:

Date: July 12, 2016
Time: 9:30 a.m.
Place: Foley Federal Building
300 S. Las Vegas Blvd.
Las Vegas, NV 89101

Judge: Hon. Laurel E. Davis



DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CA 90071

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CA 90071

**TABLE OF CONTENTS**

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

A. Underlying Note, Deed of Trust, and Modification Agreements ..... 2

B. Divorce and Defaults Under Fourth Modification Agreement ..... 4

C. Construction Defect Lawsuit ..... 4

D. Debtor's Chapter 11 Case ..... 5

1. Voluntary Petition ..... 5

2. Schedules ..... 5

3. Statement of Financial Affairs ..... 6

4. Section 341(a) Meeting of Creditors ..... 6

5. Wartenberg Chapter 7 Case ..... 6

6. Status Report ..... 7

III. ARGUMENT ..... 7

A. The Case Should Be Dismissed Or Converted Pursuant To Bankruptcy Code Section 1112(b)(1) ..... 7

1. The Debtor Will Be Unable To Confirm A Plan In This Case ..... 8

2. The Debtor Has Failed to Comply With Applicable Provisions Of The Bankruptcy Code And Bankruptcy Rules ..... 10

3. The Debtor's Case Was Filed In Bad Faith ..... 12

B. Conversion, Rather Than Dismissal, Is In The Best Interests Of Creditors ..... 13

IV. CONCLUSION ..... 15

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CA 90071

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Alston v. Deangelis (In re Alston)*, 2013 U.S. Dist. LEXIS 168661 (E.D. Pa. 2013) ....7, 8

*AmeriCERT, Inc. v. Straight Through Processing, Inc. (In re AmeriCERT, Inc.)*, 360 B.R. 398 (Bankr. D.N.H. 2007) ....8, 13

*In re American Capital Equipment*, 688 F.3d 145 (3rd Cir. 2012) ....7, 8

*In re Arnold*, 806 F.2d 937 (9th Cir. 1986) ....12

*In re Hoyle*, 2013 Bankr. LEXIS 420 (Bankr. D. Idaho 2013) ....12, 14

*In re Little Creek Dev. Co.*, 779 F.2d 1068 (5th Cir. 1986) ....13

*In re Thirtieth Place, Inc.*, 30 B.R. 503 (Bankr. 9th Cir. 1983) ....8

*Marsch v. Marsch (In re Marsch)*, 36 F.3d 825 (9th Cir. 1994) ....12

*Shulkin Hutton, Inc., P.S. v. Treiger (In re Owens)*, 552 F.3d 958 (9th Cir. 2009) ....13

*YBA Nineteen, LLC v. IndyMac Venture, LLC (In re YBA Nineteen, LLC)*, 505 B.R. 289 (S.D. Cal. 2014) ....12

## STATUTES

11 U.S.C. §§ 1112(b)(1), 1112(b)(4)(E), and 1112(b)(4)(F) ....1

Bankruptcy Code section 1112 ....2, 13

Bankruptcy Code section 1112(b) ....8, 12, 13

Bankruptcy Code Section 1112(b)(1) ....7

Bankruptcy Code section 1112(b)(2) ....7

Bankruptcy Code §1112(b)(4)(E) ....12

Bankruptcy Code section 1112(b)(4)(F) ....10, 11

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CA 90071

**TO THE HONORABLE LAUREL E. DAVIS; THE OFFICE OF THE UNITED STATES TRUSTEE; DEBTOR ALLA V. KOSOVA AND HER COUNSEL; AND ALL OTHER INTERESTED PARTIES:**

CIT Bank, N.A. (f/k/a OneWest Bank N.A., f/k/a OneWest Bank, FSB) ("CIT")[1] hereby moves (the "Motion") for conversion or dismissal of the above-captioned chapter 11 case commenced by Alla V. Kosova (the "Debtor" or "Kosova"). The Motion is based on 11 U.S.C. §§ 1112(b)(1), 1112(b)(4)(E), and 1112(b)(4)(F), and is based on the following Memorandum of Points and Authorities, the record in this case, and the arguments, evidence, and representations that may be presented at or prior to the hearing on this Motion. In support of this Motion, CIT respectfully represents as follows:

## I. INTRODUCTION

In scarcely two months, the Debtor has demonstrated that she should not be entitled to the benefits of chapter 11 protection. As detailed below, the Debtor's case was filed just three days before the scheduled foreclosure of a property that is encumbered by CIT's $4,372,377.86 secured claim. Realizing that she would lose control of her assets if she filed a chapter 7 case and that she was ineligible for chapter 13 relief, the Debtor selected to file her case under chapter 11.

The pleadings filed by the Debtor in this case suggest that there is no hope for reorganization and that the Debtor is willing to play fast and loose with her fiduciary obligations as a debtor in possession. As detailed below, the Debtor's voluntary petition, schedules, and statement of financial affairs are replete with misrepresentations and omissions. Among other things, the Debtor (i) neglected to list a potentially valuable state court lawsuit asset in her schedules and later testified that she intended to use the proceeds of that lawsuit for herself, rather than for the benefit of her creditors, (ii) omitted her monthly obligation to CIT in her list of monthly expenses, thereby making it appear as though she generates net monthly income, and (iii) incorrectly stated that she lived in Nevada during the past 180 days. Additionally, the Debtor's untimely filed two-page status report reflects

[1] CIT Bank, N.A. is the servicer for IndyMac Venture, LLC, the lender and holder of the note for the loan at issue.

that the Debtor has no realistic plan to reorganize her indebtedness, as it premised upon renting a property that suffers from over 100 construction defects.

Cause exists under Bankruptcy Code section 1112 to convert or dismiss this chapter 11 case. The Debtor has failed to satisfy her filing requirements under the Bankruptcy Code. Additionally, there is no prospect for a confirmable chapter 11 case, and the case itself was not filed in good faith.

Conversion, rather than dismissal, is appropriate because the Debtor may possess a valuable cause of action that could be liquidated for the benefit of her creditors. Dismissal would allow the Debtor to maintain control over the cause of action, which would consequently prevent the Debtor's undisputed creditors from recovering any proceeds from such litigation. Further, while dismissal would allow CIT to pursue its collection efforts, it is possible that the Debtor would simply file another bankruptcy case, thereby adding more unreasonable delay for all creditors and parties in interest. Therefore, CIT respectfully requests entry of an order converting the case to chapter 7.

## II. FACTUAL BACKGROUND

### A. Underlying Note, Deed of Trust, and Modification Agreements

On August 26, 2005, IndyMac Bank F.S.B. ("IndyMac") made a loan to the Debtor and Daniel J. Wartenberg ("Wartenberg") (collectively, the "Borrowers")[2] in the amount of $3,000,000 (the "Loan"), as evidenced by an "Adjustable Rate Note" (the "Note"). Attached to the Note is an Allonge (the "Allonge"), which reads: "PAY TO THE ORDER OF INDYMAC VENTURE, LLC, WITHOUT RECOURSE."[3] The Allonge specifically identifies the Note through its Construction Loan Number of 121105863. True and correct copies of the Note and Allonge are collectively attached to the Declaration of Jeanie Caldwell (the "Caldwell Declaration") as Exhibit "A," which is being filed contemporaneously herewith.

---

[2] At that time, the Debtor and Wartenberg were married.

[3] On July 11, 2008, IndyMac Bank, F.S.B. ("IMB"), the original lender on the Note, was seized by the Office of Thrift Supervision, which appointed the FDIC as Receiver for the failed institution. Also on July 11, 2008, the FDIC, as Receiver for IMB, transferred many of the assets of IMB, including the loan at issue, to a newly chartered thrift, Indymac Federal Bank, FSB ("IMFB"), for which the FDIC was appointed Conservator. On March 19, 2009, the FDIC was appointed Receiver of IMFB and transferred certain assets of IMFB, including the loan at issue, to Indymac Venture, LLC, the current owner and holder of the lender's rights under the loan at issue. CIT Bank, N.A., formerly known as OneWest Bank, N.A. ("CIT") services the loan at issue for Indymac Venture, LLC ("IVLLC").

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CA 90071

The Loan is secured by a "Deed of Trust" dated August 26, 2005, encumbering the real property located at 11 Anthem Pointe Court, Henderson, Nevada 89052-0000 (the "Property"). A true and correct copy of the Deed of Trust is attached to the Caldwell Declaration as Exhibit "B".

The Note was amended by an attached Residential Construction Loan Addendum Amending Note (the "Addendum"). A true and correct copy of the Addendum is attached to the Caldwell Declaration as Exhibit "C." As explained in the Note, the Loan to the Borrowers represented "both a construction/home improvement loan and a permanent mortgage loan." Note, ¶ 2. The Note defined the "Construction Period" as the "period beginning on the date of the Note and ending on the first day of the month preceding the due date of the first monthly payment of principal and interest stated in the Note." *Id.* Since the first monthly payment was due on April 1, 2007, the "Construction Period" covered the period of August 26, 2005 to March 1, 2007.

On May 8, 2008, the Borrowers and IndyMac entered into a "Modification Agreement" (the "Third Modification Agreement")[4], a true and correct copy of which is attached to the Caldwell Declaration as Exhibit "D." Under the Third Modification Agreement, the loan commitment to the Borrowers increased to $4,000,000. Third Modification Agreement, ¶ 3. Additionally, the "Required Completion Date" for construction was extended from August 26, 2008 to August 26, 2009. *Id.* ¶ 2.

Five years later, on October 1, 2013, the Debtor and Wartenberg entered into a "Modification Agreement (Post Construction Modification – Balloon)" (the "Fourth Modification Agreement"). A true and correct copy of the Fourth Modification Agreement is attached to the Caldwell Declaration as Exhibit "E." The Fourth Modification Agreement provided for the elimination of the Addendum (Fourth Modification Agreement, ¶ A.i) and stated that IndyMac Venture, LLC, had no further obligations to the Borrowers to advance any funds whatsoever. *Id.* ¶ A.ii. Further, the Fourth Modification Agreement set forth a "new principal balance" of $4,169,575.42 and stated that the entire amount of the Loan would be payable in full on October 1, 2016. *Id.* ¶¶ B, D(3)(B). The initial monthly payment under the Fourth Modification Agreement

[4] IndyMac had previously provided the Debtor and Wartenberg with two extensions of the Construction Period.



DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CA 90071

was to be $13,656.05 until the first Interest Rate Change Date. *Id.* ¶ D(3)(B).

**B. Divorce and Defaults Under Fourth Modification Agreement**

On June 19, 2013, the Debtor divorced Wartenberg. *See* "Amended Nunc Pro Tunc Application to Employ Law Firm as Attorney for Debtor in Possession" [Docket No. 28], at 4 ("Debtor and Wartenberg were granted a divorce decree on June 19, 2013."). In 2015, the Debtor and Wartenberg defaulted on the Loan. CIT provided the Debtor and Wartenberg with a forbearance period, but the Debtor and Wartenberg failed to make payments on the Loan and Fourth Modification Agreement. No interest payment has been made since April 2015.

**C. Construction Defect Lawsuit**

On August 31, 2015, the Debtor filed a complaint (the "Complaint") against Westpoint Development Group, Inc. ("Westpoint") and a number of other subcontractors[5] in the District Court for Clark County, Nevada, which commenced case number A-15-723888-A (the "State Court Case"). Over two months later, on November 18, 2015, the Debtor filed her First Amended Complaint (the "FAC"). A true and correct copy of the FAC is attached to the Caldwell Declaration as Exhibit "F." The FAC contains causes of action for breach of contract, breach of express warranty, breach of implied warranty, negligence/negligence per se, and declaratory/equitable relief in connection with the construction on the Property. A number of defendants have filed answers, counter-claims, and/or cross-claims, which remained pending as of the Petition Date (as defined below).

---

5 The subcontractors include AV Arts, LLC; AM Finishing, Inc.; Badger Construction; California International Builder; C&M Garage Door Services, LLC; Concrete Solutions, Inc.; Custom Hearth Distributors, Inc.; CVC Coatings Corp.; Sun Eagle Construction LLC; Europa Stairways, LLC; Everything Cool, Inc.; Executive Painting, Inc.; L&G Painting, LLC; Five Star Painting; Fleetwood Windows & Doors; Great Basin Plumbing & Mechanical, Inc.; Harris Roofing, LLC; Hybar Windows & Doors; Innovative Concrete, LLC; JB Electric, Inc.; JCR Plastering & Drywall, Inc.; McSharry Construction; Nevada Gypsum Floors, Inc.; Nevada Mist; Northern Mechanical, Inc.; Pro Glass & Paint, Incorporated; Pro West Cabinets, LLC; Sacon Construction; Silver State Specialties, LLC; Solid State Electric, LLC; Sound and Secure, Inc.; Steel Windows & Doors USA; Stellar Millworks; Sunbelt Windows, Inc.; Talon Electric, LLC; T&S Custom Flooring, Inc.; The Cabinet Gallery; Waters by Design, Inc.; and Watertight Systems, Incorporation.

DYKEMA GOSSETT LLP
333 South Grand Avenue, Suite 2100
Los Angeles, CA 90071

**D. Debtor's Chapter 11 Case**

1. Voluntary Petition

A foreclosure sale on the Property was scheduled for April 11, 2016. However, on April 8, 2016, the Debtor commenced her chapter 11 case by filing a voluntary petition (the "Petition") for relief.[6] [Docket No. 1]. In her Petition, the Debtor indicated that she lived at 1903 Manana Street, Austin, Texas 78730 (the "Texas Property"). However, the Debtor also stated that "over the last 180 days before filing this petition," she had lived in Nevada longer than any other district. *See* Petition ¶¶ 5, 6. Further, Debtor estimated her assets to total "$0 - $50,000," while her liabilities were estimated to be "$1,000,001 - $10 million." *See* Petition ¶¶ 19, 20. The Debtor did not list Wartenberg in her creditor matrix.

2. Schedules

On April 26, 2016, the Debtor filed her Schedules. *See* Docket No. 15. The Debtor's Schedule "A/B" listed ownership of the Property and estimated its value at $2,100,000. *See* Schedule A/B, at ¶ 1.1. As for personal property, the Debtor listed, *inter alia*, an un-deposited cashiers' check in the amount of $190,000 and cash in seven bank accounts totaling approximately $8,000. *Id.* ¶¶ 16-17. The Debtor also specifically stated that she had no "claims against third parties" or "other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims." *Id.* at ¶¶ 33, 34.

In her Schedule "D", the Debtor listed two secured claims against the Property: (i) CIT, in the amount of $4,169,575, and (ii) Anthem Country Club Community Association, in the amount of $18,000. *See* Schedule D, ¶¶ 2.1, 2.3. In addition, the Debtor listed unsecured nonpriority claims in the amount of $245,320. *See* Schedule E/F, ¶¶ 1, 4.

In her Schedule "I," the Debtor stated that she is the Chief Operating Officer of Medical Diagnostics Management Services, and listed her monthly income as $9,183. *See* Schedule I, ¶¶ 4,

---

[6] The Ballstaedt Law Firm filed the Debtor's chapter 11 case. As detailed below (see Section II.D.5, *infra*), the Ballstaedt Law Firm was also counsel for record in Wartenberg's chapter 7 case, which was filed twenty (20) days later. On May 24, 2016, the Office of the United States Trustee (the "UST") filed its "Objection to the Amended *Nunc Pro Tunc* Application to Employ Law Firm as Attorney for Debtor in Possession" [Docket No. 34], which objects to the employment of the Ballstaedt Law Firm in the Debtor's case due to conflicts of interest.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CA 90071

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CA 90071

12. She also listed monthly expenses of $6,361, but did not include her obligations under the Fourth Modification Agreement. *See* Schedule J, ¶ 22c.

3. Statement of Financial Affairs

The Debtor also filed her Statement of Financial Affairs (the "SOFA") on April 26, 2016. *See* Docket No. 15. In the SOFA, she stated that she lived in the Property from 2010 to January 2015. SOFA, ¶ 2. With respect to disclosure of legal actions, the Debtor only listed a claim asserted by an individual named Jason Gerber and others against her that had been settled. SOFA, ¶ 9.

4. Section 341(a) Meeting of Creditors

On May 12, 2016, the Debtor attended the Bankruptcy Code section 341(a) meeting of creditors (the "Meeting of Creditors"). Among other things, the Debtor testified that she filed for chapter 11 protection to stop the foreclosure of the Property and that the last time that she had lived in Nevada was a year ago.[7] She also stated that there was a "freeze" on the State Court Case, but that if she prevailed in the State Court Case, she would use the proceeds towards fixing her home.[8] Finally, she stated that no parties had viewed the Property in order to rent it.[9]

5. Wartenberg Chapter 7 Case

On April 28, 2016, Wartenberg filed his own voluntary petition for relief under chapter 7, which commenced case number 16-12321-abl (the "Wartenberg Case"). In his case, Wartenberg did not list any interest in the Property. However, in his Schedule "D," he listed CIT's claim against him pursuant to the Note and Fourth Modification Agreement. *See* Wartenberg Case, Docket 1, at 22. In his "Statement of Intention for Individuals Filing Under Chapter 7," Wartenberg stated that he intends to surrender any interest that he may have in the Property. *Id.* at 81.

---

[7] *See* Transcript of Bankruptcy Code Section 341(a) Meeting of Creditors ("341(a) Transcript"), a copy of which is attached hereto as Exhibit "A," at 3.

[8] *Id.* at 16.

[9] *Id.* at 18.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CA 90071

Wartenberg's voluntary petition was filed by the Ballstaedt Law Firm, which had also previously filed the Debtor's chapter 11 petition. On April 18, 2016, Judge Landis entered an order authorizing substitution of counsel from the Ballstaedt Law Firm to Matthew W. McArthur. *See* "Order on Substitution of Attorney" [Wartenberg Case, Docket No. 15].

6. Status Report

On April 13, 2016, this Court entered an "Order Setting Status Conference" (the "Status Conference Order") [Docket No. 8]. The Status Conference Order set a status conference hearing for May 17, 2016, and directed the debtor to file a status report by May 12, 2016.

On May 17, 2016, at 9:55 a.m. (therefore, after the commencement of the status conference), the Debtor filed her "Chapter 11 Status Report" [Docket No. 31] (the "Status Report"). Among other things, the Status Report stated that the Property "is a high end property, which Debtor is seeking to rent out as a vacation rental."

## III. ARGUMENT

### A. The Case Should Be Dismissed Or Converted Pursuant To Bankruptcy Code Section 1112(b)(1)

Bankruptcy Code section 1112(b)(1) provides, *inter alia*:

> [O]n request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interest of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

11 U.S.C. § 1112(b)(1).

There are multiple instances of "cause" in the present case. First, courts dismiss or convert chapter 11 cases for cause in the absence of a confirmable plan. *Alston v. Deangelis (In re Alston)*, 2013 U.S. Dist. LEXIS 168661, at *15-16 (E.D. Pa. 2013); *In re American Capital Equipment*, 688 F.3d 145, 162 n.10 (3rd Cir. 2012).

Second, Bankruptcy Code section 1112(b)(2) identifies a number of non-exclusive circumstances that constitute "cause," including: (E) the failure to comply with a court order; and

(F) the "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter."

Finally, numerous courts have stated that the lack of good faith in filing a bankruptcy case constitutes "cause" under Bankruptcy Code section 1112(b). *See, e.g.*, *In re Thirtieth Place, Inc.*, 30 B.R. 503, 505 (Bankr. 9th Cir. 1983); *AmeriCERT, Inc. v. Straight Through Processing, Inc. (In re AmeriCERT, Inc.)*, 360 B.R. 398, 400-01 (Bankr. D.N.H. 2007).

The Debtor's case was not filed in good faith, and there is an absence of a confirmable plan. Furthermore, the Debtor has made misrepresentations and/or omitted facts in the pleadings that have been filed to date. Accordingly, cause exists under Bankruptcy Code section 1112(b) to convert or dismiss the case.

1. The Debtor Will Be Unable To Confirm A Plan In This Case

Chapter 11 cases are properly dismissed or converted when there is an absence of a confirmable plan. *Alston*, 2013 U.S. Dist. LEXIS 168661, at *15-16; *In re American Capital Equipment*, 688 F.3d at 162.

Given the facts to date, it is evident that the Debtor will not become capable of servicing her obligations under a plan in the future. Indeed, the Debtor is presently unable to even come close to making her payments to CIT under the Loan and Fourth Modification Agreement. The Debtor's Schedule "I" indicates that her monthly income is $9,183.00 (*see* Schedule I, at 2), while the Debtor's Schedule "J" states that the Debtor's monthly expenses are only $6,361 (*see* Schedule J, at 2), thereby creating monthly net income of $2,822. *Id.* However, the Debtor's Schedule J fails to list her monthly payment of $13,464.26 to CIT under the Fourth Modification Agreement, which has not been made since April 2015. Thus, the Debtor has no monthly net income, but rather a monthly deficit of $10,834.05. Therefore, under the present circumstances, there is no possible way that the Debtor could present a confirmable plan to this Court.[10]

Furthermore, the Debtor has not offered any plausible way to bridge this substantial gap. In

---

[10] Even assuming that the Debtor would be able to strip the lien on the Property to $2.1 million (the Debtor's alleged valuation of the Property), she would still need to generate significantly more than her alleged "monthly net income" to satisfy the new debt service obligation to CIT.



DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CA 90071

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CA 90071

her Status Report, which was filed on May 17, 2016, the Debtor speculates that she may be able to rent the Property. *See* "Chapter 11 Status Report" (the "Status Report") [Docket No. 31], at 1 ("This property is a high end property, which Debtor is seeking to rent out as a vacation rental."). However, in the Meeting of Creditors, the Debtor appeared to admit that she has never rented the Property in the past[11] and that she has not shown the Property to any potential tenants.[12] Indeed, as of the date of the filing of this Motion, the Debtor has not filed an application to employ a professional to assist in the renting of the Property.

Further, and perhaps more importantly, the Debtor has failed to disclose the alleged legion of problems associated with the Property. As stated in the FAC, the Property allegedly presently suffers from over 100 construction defects, including, but not limited to, the following:[13]

(1) Failed waterproofing and drainage systems;

(2) Inadequate waterproofing at plumbing penetrations;

(3) Inadequate waterproofing at electrical penetrations;

(4) Improperly installed French doors;

(5) Non-functioning steel entry door system;

(6) Improper operation of garage doors;

(7) Glazing stop failure, warping of garage doors causing water intrusion and damage to cars and stored materials;

(8) Roof leaks in garages;

(9) Incomplete interior door and hardware installation;

(10) Cracked and separating doors and frames;

(11) Poor/incomplete installation of cabinets in all bathrooms;

(12) Poor/incomplete cabinet construction in all bathrooms;

---

[11] 341(a) Transcript, at 18 ("McDonald: Have you talked to anybody that is interested in renting the house? Kosova: This is brand new, so I haven't had any clients come by, but I've talked to a few realtors that said it should not be a problem to rent the house.")

[12] *Id.*

[13] The contentions in the FAC were made solely by the Debtor, and CIT takes no position as to the veracity of such allegations.

(13) Leaking showers in bathrooms;

(14) Flooring damage throughout home;

(15) Incomplete installation of fireplaces throughout home, which are defective;

(16) Partial installation of master bath lavatories;

(17) The main house recirculating hot water system has not been installed in accordance with applicable codes or industry standards of practice and care;

(18) The house plumbing system has not been installed, started up, or properly commissioned in accordance with the applicable codes or industry standards of practice;

(19) The start-up of house HVAC system has not been completed, started up, or properly commissioned in accordance with the applicable codes or industry standards of practice; and

(20) At least twenty (20) violations of the National Electrical Code ("NEC").

*See* FAC, at 10-14. It strains credulity to assert that a party would be willing to rent such a defective property for the astronomical amount of $12,000/month.

There is no possible way for the Debtor to confirm a plan, and it is evident that this case was filed solely to delay CIT's foreclosure efforts. Accordingly, cause exists to convert this case to chapter 7.

2. <u>The Debtor Has Failed to Comply With Applicable Provisions Of The Bankruptcy Code And Bankruptcy Rules</u>

Bankruptcy Code section 1112(b)(4)(F) states that "cause" to convert a case also includes an "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter." 11 U.S.C. § 1112(b)(4)(F). This section applies to the Debtor, as she and her counsel have either provided incorrect information or omitted to disclose information on a number of occasions.

The Debtor's first misrepresentation was made on the second page of her voluntary petition. Specifically, the Debtor checked the box stating that "[o]ver the last 180 days before filing this petition, I have lived in this district longer than in any other district." Voluntary Petition, ¶ 6. The Debtor knew this statement (which was perhaps made in an effort to secure venue in Las Vegas) was incorrect at the time she filed for bankruptcy protection. She admitted to this misrepresentation





DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CA 90071

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CA 90071

when she filed her SOFA eighteen (18) days later, which disclosed that the Debtor presently resided in Texas and lived in the Property "from 2010 to 1/2015." SOFA, ¶ 2. The Debtor's testimony at the Meeting of Creditors was consistent with the SOFA.

The second failure to comply with the Bankruptcy Code and Bankruptcy Rules' reporting requirements is evidenced in the Debtor's Schedules. Remarkably, the Debtor failed to list her pending lawsuit against Westpoint and numerous other parties in her Schedule A/B. As stated above, the State Court Case is pending in Nevada state court and alleges over 100 instances of defective construction. Arguably, this lawsuit is the most valuable unencumbered asset of the Debtor's estate; yet, it was not listed in either the Debtor's Schedules or the Status Report. Compounding this Schedules omission is the fact that at the Meeting of Creditors, the Debtor stated that if she prevailed in the State Court Case, she would not use that money to make payments to unsecured creditors, but rather to repair the alleged construction defects.[14]

The Debtor made another critical omission in her Schedule "J." As stated above, she failed to list her $13,656.05 monthly obligation to CIT, which had the effect of making it appear as though she was generating net monthly income of over $2,000. This omission is crucial, as it hides the fact that the Debtor's monthly deficit exceeds $10,000, thereby making it nearly impossible for her to propose and confirm a feasible plan of reorganization.

The final failure to properly make disclosures came from the Debtor's counsel. As of the Petition Date, Debtor's counsel represented both the Debtor and Wartenberg at the same time, even though (i) Wartenberg has a monthly support obligation to the Debtor and (ii) the interests of the Debtor and Wartenberg vis-à-vis the Loan are diametrically opposed.[15] Debtor's counsel ignored these conflicts and then filed Wartenberg's chapter 7 case seventeen days later. In neither case did Debtor's counsel identify or disclose the fact that a discharge granted to Wartenberg would work to the detriment of the creditors of the Debtor's estate.

---

[14] *See* 341(a) Transcript, at 16.

[15] *See* "The Acting U.S. Trustee's Objection to the Amended *Nunc Pro Tunc* Application to Employ Law Firm as Attorney for Debtor in Possession" [Docket No. 34], at 10 ("Accordingly Daniel Wartenberg possesses economic interests that would tend to lessen the value of the Debtor's estate: he is a co-debtor on claims that account for the majority of Debtor's secured and non-priority unsecured debts.").

Hence, cause to convert or dismiss exists under Bankruptcy Code section 1112(b)(4)(F). It is evident that neither the Debtor not her counsel can be entrusted with acting in the best interests of the estate, and this Court should convert or dismiss the Debtor's case.[16]

3. The Debtor's Case Was Filed In Bad Faith

Even though section 1112(b) does not expressly state that cases must be filed in good faith, courts have overwhelmingly held that a lack of good faith in filing a Chapter 11 petition establishes cause for dismissal under section 1112(b). *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994). The Ninth Circuit has stated that "the existence of good faith depends on an amalgam of factors and not upon a specific fact." *In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986). The "test is whether a debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis." *Marsch*, 36 F.3d at 828 (citing *Arnold*).

As detailed by the facts set forth in the prior two sub-sections, the Debtor is not attempting to effect a "speedy" or "efficient" reorganization. Instead, she filed her bankruptcy case solely because foreclosure on the Property was imminent. Further, the misrepresentations and omissions contained in the petition, Schedules, SOFA, and Status Report demonstrate that the Debtor had no intention of being honest or acting as a fiduciary for her creditors or estate. First, she falsely stated that she lived in this district for longer than any other district during the past 180 days. Second, she failed to disclose her arguably most valuable unencumbered asset, the State Court Action. When asked about this pending litigation, the Debtor stated that she intended to use any proceeds obtained from the litigation to repair the alleged defects in the Property rather than distributing such money

---

16 "Cause" to convert or dismiss also exists when a party fails to "comply with an order of the court." *See* Bankruptcy Code §1112(b)(4)(E). This section does not require multiple violations; indeed, the "statute is written in the singular; thus failure to comply with a single order is sufficient for cause." *In re Hoyle*, 2013 Bankr. LEXIS 420, at *30-31 (Bankr. D. Idaho 2013) (quoting *In re Bijelonic*, 2012 U.S. Dist. LEXIS 84130, at *4 (C.D. Cal. 2012)); *see also YBA Nineteen, LLC v. IndyMac Venture, LLC (In re YBA Nineteen, LLC)*, 505 B.R. 289, 303 (S.D. Cal. 2014). Furthermore, the failure does not need be willful, in bad faith or fraudulent. *Hoyle*, 2013 Bankr. LEXIS 420, at *31 (citing *In re Babayoff*, 445 B.R. 64, 80 (Bankr. E.D.N.Y. 2011)).

The Debtor has already failed to comply with an order of this Court. Specifically, although this Court entered an order mandating that a status conference report be filed on May 12, 2016 for a May 17, 2016 status conference, the Debtor did not file her Status Report until after the hearing took place. Hence, technically, cause exists to convert or dismiss this case pursuant to Bankruptcy Code section 1112(b)(4)(E). While it is unlikely that this Court would convert or dismiss a case based on this one delinquency, CIT submits that it should be considered along with all of the Debtor's other misrepresentations and omissions.

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CA 90071

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CA 90071

to her unsecured creditors. Third, the Debtor misrepresented her monthly expenses in order to make it appear as though she generated a monthly profit. Finally, while the Debtor stated that she would be able to obtain tenants for the Property, she knew that she had never shown the Property to any potential parties and that finding a renter would be nearly impossible, given the multitude of alleged defects in the home.

Other aspects of the Debtor's case demonstrate that it was filed in bad faith.[17] As indicated in her Schedules, the Debtor's case is predominantly a single-asset one that was filed to stop CIT's foreclosure efforts. The Debtor's primary asset is the Property, an over-encumbered tract of real property that was posted for foreclosure due to arrearages owed to CIT. While it is true that the Debtor listed certain items of personal property in her Schedule "A/B," the collective value of such property is significantly less than the value of the Property.

There are additional facts supporting a bad faith finding. The Debtor does not have any employees, so it is evident that this case was not filed for one of the principal purposes of the Bankruptcy Code, which is to preserve jobs. *AmeriCERT*, 360 B.R. at 401. Further, as detailed in section III.A.1, *supra*, there are no available sources of income to sustain a plan of reorganization, which is something that the Debtor should have realized before filing her chapter 11 petition. Finally, as admitted by the Debtor, bankruptcy offered the only possibility of forestalling the inevitable loss of the Property.

The Debtor's chapter 11 case was not filed in good faith. Accordingly, cause exists under Bankruptcy Code section 1112 to dismiss or convert the case.

**B. <u>Conversion, Rather Than Dismissal, Is In The Best Interests Of Creditors</u>**

When a court determines that "cause" exists under Bankruptcy Code section 1112, it must analyze both the options of dismissal and conversion. The Ninth Circuit has stated that "when

---

[17] Courts have listed the following additional factors in examining whether a case was filed in good faith: (i) the debtor has one asset, (ii) the secured creditors' liens encumber the property, (iii) there are no employees involved in the case, (iv) there are no sources of income to sustain a plan, (v) there are only a few unsecured creditors whose claims are relatively small, (vi) the property has been posted for foreclosure because of arrearages on debt and the debtor has been unsuccessful in defending actions against the foreclosure, (vii) bankruptcy offers the only possibility of forestalling loss of the property, and (viii) there are sometimes allegations of wrongdoing by the debtor or its principles. *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072-73 (5th Cir. 1986).

deciding between dismissal and conversion under 11 U.S.C. § 1112(b), 'the court must consider the interests of all of the creditors.'" *Shulkin Hutton, Inc. , P.S. v. Treiger (In re Owens)*, 552 F.3d 958, 960-61 (9th Cir. 2009) (citing *Rollex Corp. v. Associated Materials, Inc. (In re Superior Siding & Window, Inc.)*, 14 F.3d 240, 243 (4th Cir. 1994)); *see also In re Hoyle*, 2013 Bankr. LEXIS 420, at *30-31 (Bankr. D. Idaho 2013) (quoting *In re Bijelonic*, 2012 U.S. Dist. LEXIS 84130, at *4 (C.D. Cal. 2012)).

CIT respectfully submits that creditors would benefit from conversion, rather than dismissal. It appears as though there is a significant asset in the Debtor's estate that could be administered for the benefit of creditors – the State Court Case. A chapter 7 trustee would be able to examine the Debtor's causes of action in the State Court Case and potentially prosecute the case for the benefit of the Debtor's estate. Unlike the Debtor, who was apparently hoping to keep the construction defect cause of action solely for herself, a trustee would act as a fiduciary to the estate in administering the lawsuit and making payments to secured and unsecured creditors on account of their claims against the estate.

A trustee would also be able to investigate the questionable behavior that has occurred during the first two months of this case. As detailed above, the Debtor has (i) misrepresented her domicile, (ii) understated her monthly expenses, (iii) failed to disclose the most significant asset of her bankruptcy estate, and (iv) failed to list her ex-husband in her creditor matrix or give him formal notice of the bankruptcy case. Furthermore, the Debtor (at the time of the filing of this Motion) is being represented by a firm that simultaneously filed a case on account of an individual who has a conflict with the Debtor.

While dismissal of this case would allow parties to continue collection actions against the Debtor, dismissal would not prevent the Debtor from simply filing another chapter 11 case or transferring the Property to another entity that would then commence its own improper chapter 11 case, which would cause further unjustified delay. Additionally, dismissal would give the Debtor control over that State Court Case litigation and any proceeds that might be generated therefrom.

On the other hand, conversion would work to the benefit of all parties and interest. In fact, the present case seems to be tailor-made for a chapter 7 trustee. Reorganization seems highly

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CA 90071

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE, SUITE 2100
LOS ANGELES, CA 90071

unlikely, and it is evident that this case was filed solely to prevent a foreclosure from taking place. The Debtor is clearly insolvent; however, she may possess a valuable asset that could be used for the benefit of her estate. Therefore, a trustee is needed to ensure that creditors are treated ratably pursuant to the provisions of the Bankruptcy Code.

## IV. CONCLUSION

**WHEREFORE**, CIT respectfully requests that this Court (i) grant the Motion, (ii) enter an order converting this case to chapter 7, and (iii) provide CIT with such other and further relief that is necessary and appropriate.

Dated: June 6, 2016

DYKEMA GOSSETT LLP

By: */s/ Gregory K. Jones*
Gregory K. Jones
Attorneys for CIT Bank, N.A. (f/k/a OneWest Bank N.A.)

4836-1206-7634.2
105636\000730

DYKEMA GOSSETT LLP
333 SOUTH GRAND AVENUE
SUITE 2100
LOS ANGELES, CALIFORNIA 90071

**CERTIFICATE OF SERVICE**

*In re Alla V. Kosova (2:13-18407-LED)*

I hereby certify that on this 6th day of June, 2016, I served a true and correct copy of the foregoing **MOTION FOR ORDER CONVERTING OR DISMISSING CHAPTER 11 CASE; MEMORANDUM OF POINTS AND AUTHORITIES** by electronic service to all parties on the Court's e-service list for the above-referenced matter.

Elizabeth A. Draper