_____

Honorable Gary Spraker
United States Bankruptcy Judge

Entered on Docket
November 10, 2016

ROBERT E. ATKINSON, ESQ., Bar No. 9958
Email: robert@nv-lawfirm.com
**ATKINSON LAW ASSOCIATES LTD.**
8965 S Eastern Ave, Suite 260
Las Vegas, NV 89123
Telephone: (702) 614-0600
*Attorney for Brian D. Shapiro, Trustee*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

In re:

    ALLA V KOSOVA,

        Debtor.

Case No. 16-11907-led
Chapter 7

**ORDER APPROVING MOTION TO APPROVE (I) SALE OF ESTATE ASSETS, AND (II) SETTLEMENT AGREEMENT**

Hearing Date:   November 10, 2016
Hearing Time:   9:30 a.m.

      The Chapter 7 Trustee's MOTION TO APPROVE (I) SALE OF ESTATE ASSETS, AND (II) SETTLEMENT AGREEMENT (DE #243) (the "*Motion*") came on for a hearing before this Court on November 10, 2016. Appearances were as noted in the record. The Court noted that no opposition to the Motion had been filed.

      At the hearing, the Court heard argument and representations from counsel, deliberated thereon, and then read its ruling into the record. All findings of fact and conclusions of law orally stated by the Court at the hearing are incorporated herein pursuant to Fed. R. Civ. P. 52, as made applicable to these proceedings via Fed. R. Bankr. P. 9014(c) and 7052. Good cause appearing,

**IT IS HEREBY ORDERED:**

1. The Motion is granted.

2. The Agreement,[1] attached hereto as **EXHIBIT 1**, is approved in full and in all respects.

3. Upon entry of this order, the parties to the Agreement are bound to all of the rights, obligations, releases, waivers, and all other terms contained therein.

4. Pursuant to 11 U.S.C. §363(b), the sale of all of Bankruptcy Estate's rights, title and interests in the Purchased Assets to the Buyers, as identified in the Agreement and on the specific terms contained therein, is approved. The 14-day stay otherwise imposed by Bankruptcy Rule 6004(h) is hereby waived. The sales are deemed completed upon entry of this order, and may immediately be consummated. These sales are deemed to be made in good faith, and the Buyers are afforded the protections found in 11 U.S.C. §363(m) to the maximum extent possible.

5. For the Bankruptcy Estate's administration and accounting purposes, the allocation of the Purchase Price to specific assets is as follows: (i) the sale price of the Property to NV Casa is deemed to be $2,600,000.00; (ii) the sale price of the CD Lawsuit to NV Casa is deemed to be $100,000.00; and (iii) the sale price of all property sold to Type P Mgmt is deemed to be $400,000.00.

6. The proof of claim filed by the Bank (POC #5) is hereby modified as followed:

   a. The Bank is deemed to have an allowed secured claim of $2,700,000.00. Upon entry of this Order, the $3,100,000.00 Purchase Price becomes property of the Bankruptcy Estate, and the Trustee is hereby authorized and instructed to immediately transfer $2,700,000.00 of these funds to the Bank's counsel in full satisfaction of this secured claim, and transfer the remaining $400,000.00 to the general trust account of the Bankruptcy Estate.

---

[1] Unless otherwise noted, all capitalized terms used herein shall have the same definition and meaning ascribed to them in the Motion.

b. The Bank is also deemed to have an allowed, liquidated, subordinated general unsecured claim in the amount of $1,677,597.10. That claim shall be subordinated to all allowed administrative claims and timely-filed unsecured claims, but shall be superior in priority to any tardily-filed, allowed general unsecured claim. Any unpaid balance on that unsecured claim after distributions are made in this bankruptcy case shall be deemed waived in full as against all persons and entities, whether parties to this Agreement or otherwise.

7. With respect to the SF Claim:

a. Pursuant to 11 U.S.C. §503(b), NV Casa is hereby deemed to have an allowed administrative claim in the amount of $209,622.50, which is equal to 45% of the gross proceeds realized from the SF Checks (the "*NV Casa Admin Claim*").

b. Pursuant to 11 U.S.C. §506(a), the Bank shall have an allowed secured claim in the amount of $209,622.50, which is equal to 45% of the gross proceeds realized from the SF Checks (the "*Bank's SF Secured Claim*").

c. The remaining 10% of the gross proceeds of the SF Claim shall be available (net of any bank fees imposed) for distribution to allowed administrative and general unsecured claims in this Bankruptcy Case.

d. The Bankruptcy Trustee is hereby authorized an instructed to pay both the NV Casa Admin Claim and the Bank's SF Secured Claim, in full without any further Court order required, on the 10th calendar day after the SF Checks clear the Bankruptcy Estate's trust account.

8. All parties and third parties to whom a subpoena was issued by the Trustee shall no longer be under any obligation to produce documents or to testify. Any documents previously produced shall be retained by the Trustee (or his counsel) in his files, and subject to any further use of production only by: (i) agreement of all parties to

the Agreement; (ii) subpoena; or (iii) court order.  The Trustee shall conclude the
continued 341 meeting as an asset case, and no testimony will be required by the
Debtor at that time.

9.    With respect to current motions before the Court:

    a.    The Trustee's Application to Employ the CD Attorneys [DE #101] is
hereby deemed withdrawn, and the hearing on that matter, currently set
for November 29, 2016 at 11:00 a.m., shall be vacated.

    b.    Laroque's Motion to Quash [DE #166] is hereby deemed withdrawn,
and the hearing on that matter, currently set for November 29, 2016 at
11:00 a.m., shall be vacated.

    c.    Kwiatkowski's Motion to Quash [DE #166] is hereby deemed
withdrawn, and the hearing on that matter, currently set for November
29, 2016 at 11:00 a.m., shall be vacated.

**IT IS SO ORDERED.**

# # #

Respectfully submitted by:

   /s/ Robert E. Atkinson
ROBERT E. ATKINSON, ESQ.
Nevada Bar No. 9958

## CERTIFICATION re: RULE 9021

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐ The court has waived the requirements set forth in LR 9021(b)(1).

☐ No other party appeared at the hearing or filed an objection to the motion.

☒ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

> APPROVED – Gregory Jones, Esq. (*counsel for CIT Bank, N.A.*)
> APPROVED – Jeanette McPherson, Esq. (*counsel for CIT Bank, N.A.*)
> APPROVED – Ogonna Brown, Esq. (*counsel for Nellya Volostnykh, Valery Volostnykh, and Jehna Ryland*)
> APPROVED – Zachariah Larson, Esq. (*counsel for Debtor*)
> APPROVED – Brandy Brown, Esq. (*counsel for Scott Laroque*)
> APPROVED – Athanasios Agelakopoulos, Esq. (*counsel for UST*)
> APPROVED – Brian D. Shapiro (*Trustee*)

☐ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

###

# EXHIBIT 1

## SALE AND SETTLEMENT AGREEMENT

This Sale and Settlement Agreement ("*Agreement*") is entered into by and between: THE BANKRUPTCY ESTATE OF ALLA V KOSOVA, Nevada Bankruptcy Case No. 16-11907-led (the "*Bankruptcy Estate*") by and through Chapter 7 Trustee Brian D. Shapiro ("*Trustee*"); Debtor ALLA V KOSOVA ("*Debtor*"); TKSC, LLC, a Nevada limited-liability company ("*TKSC*"); DATKSC, LLC, a Nevada limited-liability company ("*DATKSC*"); RARE FINDS, LLC, a Nevada limited-liability company ("*Rare Finds Nevada*); RARE FINDS, LLC, a Texas limited-liability company ("*Rare Finds Texas*"); NELLYA VOLOSTNYKH ("*Nellya*"); VALERY VOLOSTNYKH ("*Valery*"); individual SCOTT LAROQUE ("Laroque"); LFF HOLDINGS GROUP, LTD., a Texas corporation ("*LFF HOLDINGS*"); NV CASA DOMAIN, L.L.C., a Texas limited-liability company ("*NV Casa*"); TYPE P MANAGEMENT, L.L.C., a Texas limited-liability company ("*Type P Mgmt*"); and creditor INDYMAC VENTURE, LLC, a Delaware limited-liability company, along with its servicer CIT Bank, N.A. (collectively, the "*Bank*"). Each may hereinafter be referred to as a "Party," or collectively as the "Parties." Nellya and Valery are signing in both their respective individual capacities, and also all companies of which either or both of them are members, majority owners, directors, or otherwise control 50% or more of the voting equity (collectively in all such capacities, "*Debtor's Parents*"). NV Casa and Type P Mgmt are collectively referred to herein as the "*Buyers*."

## RECITALS

WHEREAS, on April 8, 2016, the Debtor filed a voluntary petition for bankruptcy relief under chapter 11 of the Bankruptcy Code (Title 11 of the United States Code), initiating bankruptcy case no. 16-11907-led (the "*Bankruptcy Case*") and thereby creating the Bankruptcy Estate;

WHEREAS, on August 16, 2016, an order was entered (DE #83) converting the Bankruptcy Case to one under Chapter 7 of the Bankruptcy Code;

WHEREAS, Trustee is the appointed Chapter 7 Trustee of the Bankruptcy Estate;

WHEREAS, to date the Trustee has liquidated and is in possession of a gross amount of $216,616.44 in funds (the "*Liquidated Assets*") (comprised of $205,616.44 obtained post-conversion from the bank accounts of the Debtor, plus an $11,000.00 check obtained post-conversion from a post-petition refund of attorney's fees), all of which (less any bank fees imposed) is currently held by the Bankruptcy Estate;

WHEREAS, the Trustee expects to be receiving, or has received, three checks from State Farm totaling $465,827.77 (the "*SF Checks*") at the time of the execution of this Agreement, arising from one or more pre-petition claims made by Debtor against State Farm (which, along with the SF Checks, are collectively hereinafter referred to as the "*SF Claim*");

WHEREAS, the Trustee, in his investigations into the financial affairs of the Debtor, has alleged that he has reason to believe that a substantial amount of nonexempt assets could be recovered and liquidated by the Bankruptcy Estate for the benefit of unsecured creditors, including potential unscheduled assets, recovery of potential preferential payments pursuant to 11 U.S.C. §547, and also recovery of potential fraudulent transfers pursuant to 11 U.S.C. §548

and other applicable state and Federal law;

WHEREAS, Debtor is the sole deed owner of residential real property located in Clark County, Nevada, and specifically APN 190-07-513-001, commonly known as 11 Anthem Pointe Court, Henderson NV 89052 (the "*Property*");

WHEREAS, the Property is encumbered by a deed of trust recorded in the land records of Clark County, Nevada against the Property's parcel as instrument no 20050831-0006411 (the "*Deed of Trust*");

WHEREAS, the Bank has filed a proof of claim, numbered 5 in the claims registry of this Bankruptcy Case (the "*Bank's POC*"), in which is asserted a secured claim in the amount of $4,377,597.10 arising from non-payment on a certain promissory note (the "*Note*") which the Deed of Trust secures;

WHEREAS, on the Petition Date, Debtor was plaintiff in a certain construction defect lawsuit relating to the Property, filed in the Eighth Judicial District Court, Clark County Nevada as case no. A-15-723888-D (the "*CD Lawsuit*");

WHEREAS, on September 15, 2016, the Trustee filed an application [DE #101] in this Bankruptcy Case (the "*Application to Employ*") seeking approval for the Trustee to employ Debtor's litigation counsel in the CD Lawsuit (the "*CD Attorneys*"), on substantially the same terms as they were employed by the Debtor in the CD Lawsuit;

WHEREAS, the Bank intends to object to the Application to Employ, asserting that the Bank has a security interest in all proceeds of the CD Lawsuit, or, in addition or in the alternative, that the Bank is the proper party-in-interest as plaintiff in that lawsuit, or can obtain proper party-in-interest status by invoking a mandatory assignment clause contained in a rider to the Deed of Trust;

WHEREAS, the Trustee disputes the Bank's assertions with respect to the CD Lawsuit, arguing that any security interest claimed by the Bank was not perfected in accordance with Nevada law; and furthermore arguing that the Bank cannot be assigned the claim because such assignment cannot be invoked post-petition;

WHEREAS, the Bank and the Trustee wish to settle and compromise their dispute relating to the CD Lawsuit;

WHEREAS, the Bank has agreed that the Trustee may short-sale the Property to buyer NV Casa, on the terms contained herein, including a subordination of its remaining unsecured claim;

WHEREAS, the Bank and the Trustee have agreed that the CD Lawsuit, and all the claims therein and all the proceeds that may arise therefrom, can be also sold along with the Property to buyer NV Casa, on the terms contained herein;

WHEREAS, NV Casa desires to purchase the Property along with the CD Lawsuit (and all proceeds thereof), on the terms contained herein;

Settlement Agreement - Page | 2

WHEREAS, Type P Mgmt desires to purchase all other nonexempt property of the Bankruptcy Estate, known and unknown (except for and excluding the Liquidated Assets and the SF Claim, which the Trustee shall retain), on the terms contained herein;

WHEREAS, the Debtor's amended Schedule D [DE #96] identifies Nellya as having a security interest in the CD Lawsuit, which the Debtor subsequently testified to actually being an assignment of claims, instead of a security interest;

WHEREAS, the Debtor's amended Statement of Financial Affairs separately identifies Nellya as having transferred $170,000.00 to Debtor in the past (the "*Transferred Money*");

WHEREAS, Nellya and Valery agree to waive any and all claims whatsoever that they may have against the Bankruptcy Estate, including, but not limited to, any and all claims they may have relating to the CD Lawsuit, and all claims to the Transferred Money;

WHEREAS, to facilitate the settlement and sale contemplated herein, Debtor has agreed (without any admissions and intended by her solely for the purpose of facilitation) to waive her bankruptcy discharge and also all claims of exemption in property of the Bankruptcy Estate; and

WHEREAS, the Parties have reviewed their respective claims and defenses, and believe it is in the best interest of those involved to settle and resolve all disputes between them and consummate the sale of assets as described herein, and the Parties wish to do so freely and voluntarily, after having had the opportunity to seek the advice of independent counsel with full knowledge of the binding and conclusive nature thereof;

NOW, THEREFORE, in consideration of the promises, covenants, warranties, and representations set forth herein, each of the Parties, without any admission of wrongdoing by any of them, agree as follows:

1.     **Recitals**. As a condition of this Agreement, the Parties agree that all of the foregoing Recitals are true and correct. The foregoing Recitals are incorporated herein by such reference and made a part of this Agreement. If this Agreement is executed but ultimately deemed null and void or not approved by the Bankruptcy Court, the Recitals are not binding admissions on the Parties.

2.     **Contingent on Bankruptcy Court Approval**. The Parties acknowledge that this Agreement, and all obligations and releases contained herein, are contingent upon Bankruptcy Court approval. The Trustee shall prepare and file a motion to obtain such approval (the "*Motion to Approve*") on shortened time, seeking a hearing on or prior to November 8, 2016; however, the Parties understand that the request for shortened time is ultimately at the Bankruptcy Court's availability and discretion. All Parties hereto agree not to directly or indirectly oppose the Motion to Approve, or appeal any order granting the Motion to Approve. If the Bankruptcy Court does not approve this Agreement, then this Agreement, and all of the obligations and releases contained herein, are null and void.

3.     **Effective Date**. In the Motion to Approve, the Trustee shall request a waiver of the 14-day stay otherwise imposed under Bankruptcy Rule 6004(h). If so waived, then

the effective date of this Agreement (the "*Effective Date*") shall be the date when any Bankruptcy Court order approving this Agreement is docketed. If the Court does not waive the stay, then the Effective Date shall be 15 calendar days after entry of the order approving this Agreement. All obligations and releases contained herein shall become effective only on the Effective Date. All Parties hereto agree not to appeal or file a motion to stay any order approving this Agreement.

4.      **Retention of Liquidated Assets and SF Claim by the Bankruptcy Estate.** All Parties hereby agree that the gross $216,616.44 of Liquidated Assets is property of the Bankruptcy Estate, and shall be available (net of any bank fees imposed) for distribution to allowed administrative and general unsecured claims in this Bankruptcy Case. Debtor waives, now and forever, all claims of exemption in the Liquidated Assets, and any future amendment that may be made to Debtor's Schedule C to the contrary shall be null and void. Debtor and Debtor's Parents waive, now and forever, any and all claims that any portion of the Liquidated Assets were, are, or arose from either the Transferred Money or were funds held in trust by the Debtor, and any claim filed or asserted otherwise in this Bankruptcy Case shall be null and void.

All Parties also hereby agree that the SF Claim (which, as defined above, is inclusive of the SF Checks) is property of the Bankruptcy Estate. Debtor waives, now and forever, all claims of exemption in the SF Claim, and any future amendment that may be made to Debtor's Schedule C to the contrary shall be null and void.

5.      **Sale of All Other Bankruptcy Estate Assets**. The Bankruptcy Estate shall sell all of its interests in all other Bankruptcy Estate property, other than the Liquidated Assets and the SF Claim, to the Buyers for a total of $3,100,000.00 (the "*Purchase Price*"), on the following terms:

(a)      *Assets Sold, Allocation of Purchase Price, and Classification.* The assets being sold (the "*Purchased Assets*")[1] are all of the Bankruptcy Estate's interest in:

| Asset | Buyer | Allocation of Purchase Price | Classification |
|---|---|---|---|
| The Property (11 Anthem Point Ct, Las Vegas NV) | NV Casa | $2,600,000.00 [2] | Secured by DOT |
| The CD Lawsuit (Nevada Eighth District Court case no. A-15-723888-D) | NV Casa | $100,000.00 | Secured by DOT |
| All other non-exempt property of the | Type P Mgmt | $400,000.00 | Unsecured |

---

[1]  The Motion to Approve shall, in addition to seeking approval of this Agreement pursuant to Bankruptcy Rule 9019 request authorization to sell the Purchased Assets to Buyers on an as-is basis pursuant to 11 U.S.C. §363(b), and furthermore shall request that Buyers each be deemed a good-faith purchaser for the purposes of 11 U.S.C. §363(m).

[2]  For the purpose of any Bankruptcy Estate tax return filed by the Trustee, the Debtor hereby represents that the original cost basis for the Property is in excess of $4 million, and therefore Debtor, the Trustee, and the Bank acknowledge and agree that the sale of the Property and CD Lawsuit contemplated herein is being sold by the Bankruptcy Estate to NV Casa at a loss.

| Bankruptcy Estate (excluding the Liquidated Assets and the SF Claim), plus all claims against third parties held by the Bankruptcy Estate against any person or entity (including but not limited to all preference claims under 11 U.S.C. §547, and all fraudulent transfer claims under 11 U.S.C. §548 and other applicable state and Federal law) | | | |
|---|---|---|---|
| | **TOTAL** | **$3,100,000.00** | |

(b)    *Transfer of Purchase Price to Trustee.*  At the time of Buyers' execution of this Agreement, Laroque shall cause his counsel to wire transfer the Purchase Price funds to the bank account of the Bankruptcy Estate.  The Trustee shall hold these funds in trust until the hearing on the Motion to Approve, and continuation or appeal thereof.  The Purchase Price shall remain the sole property of Laroque until such time as the Motion to Approve is granted and the Effective Date is reached.  Only on the Effective Date (as defined herein) shall the funds representing the Purchase Price be property of the Bankruptcy Estate, and the asset sale contemplated herein shall be consummated (as described in subsections (e), (f), and (g) below), and neither Laroque nor the Buyers shall thenceforth have any further claim to the Purchase Price funds, the same being irrevocably conveyed to the Bankruptcy Estate.  If, for any reason, the Bankruptcy Court does not approve this Agreement, then the Trustee shall, in the order denying the Motion to Approve, seek authorization to wire the Purchase Price funds (they still being the sole property of Laroque and it being expressly agreed herein that no party shall ever acquire any interest in or claim to such funds unless the Motion to Approve is approved as set forth herein) back to Laroque's counsel within three business days of docketing of that order denying the Motion to Approve.

(c)    *Execution of Documents by Trustee in Anticipation of Consummation of Sale.*  At least two business days prior to the hearing on the Motion to Approve, the Trustee shall execute two documents: (1) a quitclaim deed of the Property to NV Casa, in a form substantially shown in EXHIBIT A attached hereto (the "*Quitclaim Deed*"); and (2) an assignment of the Bankruptcy Estate's interest in the CD Lawsuit in a form substantially shown in EXHIBIT B attached hereto (the "*Assignment of Claim*"), both of which shall be held in trust by the Trustee or his counsel pending the hearing on the Motion to Approve. [If, for any reason, the Bankruptcy Court does not approve this Agreement, then the Quitclaim Deed and the Assignment of Claim shall be of no force and effect.]

(d)    *Execution of Documents by Bank in Anticipation of Consummation of Sale.*  At least two business days prior to the hearing on the Motion to Approve, the Bank shall cause an authorized person to execute a full reconveyance of the Deed of Trust in a form substantially shown in EXHIBIT C attached hereto (the "*Reconveyance of DOT*"), which shall be held in trust by the Bank's counsel pending the hearing on the Motion to Approve. [If, for any reason, the Bankruptcy Court does not approve this Agreement, then the Reconveyance of DOT shall be of no force and effect.]

(e)    *Consummation of Sale of the Real Property Upon Effective Date.*  On the Effective Date, the sale to NV Casa of the Bankruptcy Estate's interest in the Property shall be deemed complete.  Consummation of that sale shall be as follows:

Settlement Agreement - Page | 5

- The Trustee shall, within one business day of the Effective Date, provide a scan of the executed Quitclaim Deed to Laroque's counsel, with the original to be sent by runner or by first-class mail or overnight delivery to Laroque's Las Vegas counsel, as to be agreed between the parties.
- The Trustee shall, within one business day of the Effective Date, wire $2.6 million to the trust account of the Bank's counsel. The Trustee shall ensure that the order granting the Motion to Approve specifically authorizes this transfer of funds to the Bank to consummate the sale, upon the Effective Date.
- Within one business day of the clearing of the $2.7 million in funds ($2.6 million for the sale of the Property as set forth in this paragraph and $100,000 for the assignment of interest in the CD Lawsuit as set forth in paragraph 5(f) below), the Bank's counsel shall provide a scan of the executed Reconveyance of DOT to Laroque's counsel, with the original to be sent by overnight delivery to Laroque's Las Vegas counsel.
- NV Casa shall be responsible for recording the Quitclaim Deed and paying all real property transfer taxes associated therewith.
- Failure of either the Trustee or the Bank's Counsel to consummate the sale of the Property as described above shall constitute just cause for any Party to file an emergency motion to compel consummation.

(f)     *Consummation of Assignment of CD Lawsuit Upon Effective Date.* On the Effective Date, the assignment to NV Casa of the Bankruptcy Estate's interest in the CD Lawsuit shall be deemed complete. Consummation of that assignment shall be as follows:

- The Trustee shall, within one business day of the Effective Date, provide a pdf scan of the executed Assignment of Claim to Laroque's counsel, with the original to be sent by runner or by first-class mail or overnight delivery to Laroque's Las Vegas counsel, as to be agreed between the parties.
- The Trustee shall, within one business day of the Effective Date, wire $100,000.00 to the trust account of the Bank's counsel. The Trustee shall ensure that the order granting the Motion to Approve specifically authorizes this transfer of funds to the Bank to consummate the assignment, upon the Effective Date.
- NV Casa shall be responsible for all noticing of change of Plaintiff in the CD Lawsuit.
- NV Casa shall be responsible for all of the legal fees and costs incurred to date by the CD Attorneys, and shall not have (or file any document seeking approval of) any claim (including

any administrative claim) against the Bankruptcy Estate for any fees or costs incurred by the CD Attorneys prior to or during the pendency of this Bankruptcy Case.

- The Trustee shall ensure that ensure that the order granting the Motion to Approve acts as a withdrawal of the Application to Employ the CD Attorneys (DE #101), effective upon the Effective Date.

- Failure of the Trustee to consummate the assignment as described above shall constitute just cause for any Party to file an emergency motion to compel consummation.

(g)    *Consummation of Sale of All Other Assets.*  On the Effective Date, the sale to Type P Mgmt of all other property of the Bankruptcy Estate (except for the Liquidated Assets, and the SF Claim) shall be deemed complete and consummated upon entry of the order approving this Agreement.  Furthermore:

- The Trustee shall, upon demand by Type P Mgmt (or its counsel), provide a Bill of Sale evidencing the sale of these assets.  Any such Bill of Sale shall only describe the assets sold in general terms and not identify any particular property,  i.e., "any and all right, title and interest in non-exempt assets of the Bankruptcy Estate" and "all of the Bankruptcy Estate's claims (each, a "*Claim*") and causes of action (each, a "*Cause of Action*") that may exist against any person or entity, including, without limitation, potential avoidance action claims under sections 544, 547, 548, and 550 of the Bankruptcy Code, and state law avoidance claims." [3]

---

[3] The assets being sold shall include all of the following:  All claims recoverable under Section 550 of the Bankruptcy Code, all claims held by the Bankruptcy Estate against third parties, and all other claims of any kind or character whatsoever owed to or in favor of the Debtor or the Bankruptcy Estate, to the extent not specifically released pursuant to this Agreement, are hereby preserved and retained for enforcement by Type P Mgmt subsequent to the Effective Date. Nothing in this Agreement shall act as a bar as it relates to any claims against third parties, except as expressly released pursuant to the Agreement. Nothing in this Agreement shall estop Type P Mgmt from asserting claims against third parties.  Such claims shall be preserved for the benefit of Type P Mgmt and to the extent any such claims are pursued and any recovery made thereon it shall flow to Type P Mgmt.  The Claims and Causes of Action being conveyed include:  Any and all saleable claims, causes of action, cross claims or counterclaims held or assertable by the Bankruptcy Estate, including but not limited to: (i) any claim or cause of action under a policy of liability insurance or otherwise; (ii) a Cause of Action; and (iii) to the extent not included in the term Cause of Action, any and all claims, causes of action, counterclaims, demands, controversies, against third parties on account of costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, and executions of any nature, type, or description which the Bankruptcy Estate has or may come to have, including, but not limited to, negligence, gross negligence, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business relationships, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies (both civil and criminal), racketeering activities, securities and antitrust violations, tying arrangements, deceptive trade practices, breach or abuse of fiduciary duty, breach of any alleged special

- After the Effective Date, Type P Mgmt, at its own expense, may proceed as claimant in any action arising from a purchased claim, in the place and stead of the Bankruptcy Estate or the Trustee (as applicable), whether such proceeding occurs in the Bankruptcy Court or in any other forum. Any such recoveries that may be obtained by Type P Mgmt in the monetization of these claims shall be the sole property of Type P Mgmt, or any subsequent assignee thereof.

(h)      *All Sales on As-Is, Where-Is Basis.*  Laroque and the two Buyers represent that they have performed adequate due diligence on the Purchased Assets, and have been provided an opportunity to review the claims in the CD Lawsuit, as well as any associated expert reports therein.  They further represent that they are aware that Debtor's Parents may have a latent, patent, or commingled ownership or other interest in some of the Debtor's non-exempt assets that comprise some of the Purchased Assets, and may have a claim (via assignment or security interest) to the CD Lawsuit or the proceeds thereof.  Laroque and the two Buyers hereby waive any remaining due diligence on all of the Purchased Assets and also waive all seller disclosures on the Purchased Assets.  Laroque and the two Buyers agree that once this Agreement is signed by all Parties hereto, there is no due diligence period and the Buyers' commitment to purchase the Purchased Assets is irrevocable (contingent only upon Bankruptcy Court approval) and furthermore that sale of the Purchased Assets is deemed complete as of the Effective Date.  Laroque and the two Buyers specifically acknowledge and understand that the Purchased Assets are being sold to the Buyers on an as-is-where is basis pursuant to 11 U.S.C. §363(b), and that the Trustee is in the process of performing discovery on non-exempt assets and potential recoveries, and that, after the Effective Date, the Buyers will be responsible for any further investigation of and monetization of all Purchased Assets, and all costs for doing so.

(i)      *Indemnification of Bankruptcy Estate for a Scheduled Claim.*  As a material incentive to inducing the Bankruptcy Estate and the Bank to enter into this Agreement: (i) Laroque represents and warrants that the potential claimants scheduled by Debtor as "Steve Trettin" [DE #24] and "MDM Properties c/o Steve Trettin" [DE #96] are the same claim and that this claim is being separately settled by Laroque; and (ii) Laroque hereby indemnifies the Bankruptcy Estate for any allowed claim that may be filed in this Bankruptcy Case by either MDM Properties or Steve Trettin.

---

relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, at law or in equity, in contract or in tort, or otherwise, known or unknown, suspected or unsuspected, except as otherwise released herein. It is the intent of the Bankruptcy Estate that this list of claims sold shall be as broad as permitted by applicable law and shall include all claims, whether or not disclosed in the Debtor's Schedules filed in this case.  Nothing shall estop Type P Mgmt from asserting claims or causes of action just because they were not scheduled.  Such claims shall be transferred to Type P Mgmt.  The assets being sold to Type P Mgmt include all equity in the Debtor's 2014 Lexus RX 350 [VIN: 2T2BK1BAXEC236792] and both Type P Mgmt and Debtor agree that title thereto shall be issued or assigned to Scott Laroque (or any entity that he may so designate).



6. **Settlement Between Bank and Bankruptcy Estate**. To settle, resolve, and compromise the disputes between the Bank and the Trustee, the Parties agree as follows:

- The Bank's $4,377,597.10 claim against the Bankruptcy Estate shall be treated and allowed as follows:
  - Relating to the $3.1 million Purchase Price, the Bank shall have an allowed secured claim of $2,700,000.00;
  - Relating to the SF Claim, the Bank shall have an allowed secured claim equal to 45% of gross proceeds realized therefrom (the "*Bank's SF Secured Claim*"); and
  - The bank shall have an allowed unsecured claim (hereinafter the "*Bank's Unsecured Claim*") for the remainder of its $4,377,597.10 claim that is not secured as per above. For all purposes in this Bankruptcy Case, the Bank's Unsecured Claim shall be deemed to be liquidated.
- The Bank's Unsecured Claim shall be subordinated to all allowed administrative claims and all allowed and timely-filed general unsecured claims. However, the Bank's Unsecured Claim shall be superior in priority to any tardily-filed, allowed general unsecured claim.
- All Parties hereto agree not to object to the Bank's POC, or to its allowance and treatment pursuant to the above terms, for any reason.

In addition, the Bank agrees as follows:

- The Bank agrees never to pursue any damages or the deficiency on the Note or file any complaint seeking any damages or deficiency judgment on the Note as against any of the Parties to this Agreement.
- The Bank agrees that it is monetizing its claim only by and through the Bankruptcy Case. The Bank shall be paid on the Bank's Unsecured Claim only via distributions to unsecured creditors, as part of the Trustee's normal administration of the Bankruptcy Estate, and any unpaid balance on that unsecured claim after distributions are made shall be deemed waived in full as against all persons and entities, whether parties to this Agreement or otherwise.

With respect to the SF Claim, all Parties agree as follows:

- Bank agrees that the Trustee can endorse the SF Checks on behalf of the Bank, prior to depositing them into the Bankruptcy Estate's bank account, and furthermore agrees to sign a stipulation to this effect.
- If the SF Checks are cannot be deposited or for any reason need to be reissued prior to deposit, then all Parties agree to cooperate to promptly get State Farm to reissue new checks (either in the Trustee's name, or, alternatively, reissued as is with the existing payee names),

and also to cooperate in any and all other ways that may be required for the Trustee to monetize the SF Claim.

- NV Casa shall have an allowed administrative claim (the "*NV Casa Admin Claim*"), pursuant to 11 U.S.C. §503(b), equal to 45% of the gross proceeds realized from the SF Claim.

- 10% of the gross proceeds of the SF Claim shall be available (net of any bank fees imposed) for distribution to allowed administrative and general unsecured claims in this Bankruptcy Case.

- In the Motion to Approve, the Trustee shall seek Court approval for permission to pay both the NV Casa Admin Claim and the Bank's SF Secured Claim, in full without any further Court order required, on the later of: (i) 10 calendar days after the SF Checks clear the Bankruptcy Estate's trust account; or (ii) the Effective Date.

7.    **Debtor's Waiver of Discharge and all Claims of Exemption**.    To facilitate the settlement and sale contemplated herein, Debtor shall waive her bankruptcy discharge. Debtor shall do so by signing the waiver attached hereto as EXHIBIT D at the time of execution by her of this Agreement, and her counsel shall transfer that original signed waiver to the Trustee within two business days, to be received by the Trustee prior to the hearing on the Motion to Approve. The Trustee shall hold that waiver in trust pending approval of this Agreement, and may only file it on the docket of this Bankruptcy Case after the Effective Date. Upon filing the waiver after the Effective Date, the Trustee will file an *ex parte* motion seeking Court approval of that waiver pursuant to 11 U.S.C. §727(a)(10), and all Parties hereto agree not to oppose that *ex parte* motion.

Furthermore, as of the Effective Date, Debtor hereby also waives any and all claims of exemption that she may have, under any applicable law, in: (i) all of her real and personal property, whether tangible or intangible, whether scheduled or unscheduled, that existed as of the Petition Date; and (ii) any claim of exemption that may arise pursuant to 11 U.S.C. §522(g) (or other applicable law) in any property that may subsequently be recovered by the Trustee or Type P Mgmt. As of the Effective Date, this blanket waiver of all exemptions overrides and supersedes all prior Schedule C forms (as amended) that have ever been filed by the Debtor in this Bankruptcy Case. Any future amendment to the Debtor's Schedule C shall be null and void. Debtor understands that the legal effect of this section is that all property of the Bankruptcy Estate, other than the Liquidated Assets and the SF Claim, are being purchased by the Buyers.

8.    **Cessation of Discovery by Trustee**. To facilitate the settlement and sale contemplated herein, the Trustee shall temporarily cease outbound discovery at the time all Parties execute this Agreement (including cessation of review of any documents that may be received in the future in response to previously-issued discovery requests), until the time for hearing on the Motion to Approve. In particular:

(a)    With respect to the following Subpoenas for Request for Production of Documents, for which no or only partial responses have been received to date, the Trustee agrees to not file any motion to compel, all Parties reserve all rights to file motions to quash or motions for protective orders, and preserve any and all objections to these subpoenas,

Settlement Agreement - Page | 10

the scope of these subpoenas, and the propriety of these subpoenas, and the Trustee also agrees to continue the due date for production, as follows:

| Subpoena for Documents issued to: | New due date for production: |
|---|---|
| Terrance Kwiatkowski (2 subpoenas) | November 18, 2016 |
| Debtor (5 subpoenas) | November 18, 2016 |
| Nellya Volostnykh | November 18, 2016 |
| Valery Volostnykh | November 18, 2016 |
| Bank of Nevada (2 subpoenas) | November 23, 2016 |
| American Express (2 subpoenas) | November 28, 2016 |
| Attorney Realty Alliance / Ron Klug (2) | November 18, 2016 |

(b)    On the Effective Date, the subpoenas identified in subsection (a) above, along with any and all other subpoenas for the production of documents that may still be outstanding, shall be deemed withdrawn and of no further force or effect, and the party to whom the subpoena had been issued shall no longer be under any obligation to produce documents. Any documents produced by such third parties shall be retained by the Trustee (and his counsel) in his files, and subject to any further use of production after the Effective Date only by agreement of all parties to this Agreement, by subpoena, or by court order.

(c)    Upon signing of this Agreement by all Parties, the following Subpoenas to Appear for Rule 2004 Examination shall be deemed immediately withdrawn, without prejudice:

- Terrance Kwiatkowski
- Nellya Volostnykh
- Valery Volostnykh
- Jehna Ryland
- Tyler Corbridge
- Ronald Klug

(d)    Upon signing of this Agreement by all Parties, the Trustee shall temporarily cease discovery upon, and shall not issue any further subpoenas (whether for production of documents or for a Rule 2004 examination or otherwise) to any person or entity, including but not limited to:

- Scott Laroque
- SCAGTASK, LLC
- Medical Diagnostics Management Services, LLC
- Any other company owned or controlled by Scott Laroque
- Any company owned or controlled by Debtor
- Any company owned or controlled by Nellya or Valery
- Any company managed by Jehna Ryland
- Triple 7 Movers
- Craters and Freighters
- Kyle Wartenberg
- Tristen Wartenberg
- Debtor



(e)     If for any reason the Bankruptcy Court does not approve this Agreement at the hearing on the Motion to Approve, then the temporary cessation of discovery by the Trustee described above shall terminate, and the Trustee may resume all discovery. In addition, if for any reason the Bankruptcy Court does not approve this Agreement at the hearing on the Motion to Approve, then all Parties hereto reserve all rights to file motions to quash or motions for protective orders, and preserve any and all objections to the subpoenas, the scope of the subpoenas, and the propriety of the subpoenas, including, but not limited to, the subpoenas served upon Bank of Nevada.

(f)     By previous stipulation (DE #198) and order approving the same (DE #221) (collectively, the "*Stipulation to Continue 341*"), the Trustee had agreed to continue the Section 341 creditor's meeting to November 10, 2016, at 8:00 a.m. PST. If the Effective Date occurs prior to that date, then the Trustee shall conclude the continued 341 meeting at that time as an asset case, and no testimony will be required by the Debtor. If the initial hearing on the Motion to Approve occurs after that date, or if the Court approves this Agreement but the Effective Date is anticipated to be after November 10, 2016, then the Trustee shall continue the 341 meeting to a date and time after the anticipated Effective Date. If for any reason the Bankruptcy Court does not approve this Agreement at the hearing on the Motion to Approve, then the 341 meeting shall proceed as planned, and the Debtor's presence shall be required, as per the terms contained in the Stipulation to Continue 341.

9.     **Waiver of Claims by Debtor and Insiders**.  On the Effective Date, the Debtor and also certain other Parties [Debtor's Parents, TKSC, DATKSC, Rare Finds (Nevada), and Rare Finds (Texas) (collectively, the "*Insiders*")] hereby each agree to waive all claims that each Party has, or may have, including all known and unknown pre-petition and post-petition claims (including secured claims, unsecured claims, administrative claims, or otherwise) against the Bankruptcy Estate (and the Trustee). Debtor and each of the Insiders agree not to file a proof of claim in the Bankruptcy Estate, or to file a motion or pleading asserting any claim against the Bankruptcy Estate. Any proof of claim or administrative claim filed by Debtor or any Insider (whether on behalf of themselves or for any other person or entity) shall be null and void *ab initio*.

10.    **Waiver of Claims by Laroque and Affiliates**.  On the Effective Date, Scott Laroque, LFF Holdings, and the Buyers (collectively, the "*Laroque Affiliates*") hereby each agree to waive all claims that each Party has, or may have, including any and all pre-petition and post-petition claims that may exist (including secured claims, unsecured claims, administrative claims, or otherwise) against the Bankruptcy Estate (and the Trustee). Each of the Laroque Affiliates agree not to file a proof of claim in the Bankruptcy Estate, or to file a motion or pleading asserting any claim against the Bankruptcy Estate.  Any proof of claim or administrative claim filed by any of these Parties shall be null and void *ab initio*. The Laroque Affiliates retain all rights to enforce this Agreement and any documents attendant thereto once approved by the Court.

11.    **Mutual Limited Release of Laroque Parties**.  On the Effective Date, the Bankruptcy Estate and all Parties hereto absolutely and forever releases, acquits and discharges Scott Laroque along with all companies which he owns or controls (including but not limited to SCAGTASK, LLC, LFF Holdings, and the Buyers) (collectively, the "*Laroque Releasees*"),

from any and all potential or actual claims, causes of action, derivative claims, and claims for attorneys' fees and costs, which the Bankruptcy Estate and the Parties now hold, or ever have held, whether at law or in equity, against the Laroque Releasees. The Laroque Releasees also release the Bankruptcy Estate (along with the Trustee and his counsel) and the Bank from any and all potential or actual claims, causes of action, derivative claims, and claims for attorneys' fees and costs, which they now hold (if any), or ever have held, whether at law or in equity.

12.    **Mutual Limited Release of Bank**.    On the Effective Date, the Bankruptcy Estate and all Parties hereto absolutely and forever releases, acquits and discharges the Bank, along with all of its employees, managers, servicers, agents, and attorneys (collectively, the "*Bank Releasees*"), from any and all potential or actual claims, causes of action, derivative claims, and claims for attorneys' fees and costs, which the Bankruptcy Estate and the Parties now hold, or ever have held, whether at law or in equity, against the Bank Releasees, and in particular from any and all claims and causes of action that may exist relating to the Note, the Deed of Trust, the underlying loan and all documents relating thereto (collectively, the "*Loan*"), and the origination, servicing, and special servicing thereof. On the Effective Date, the Bank Releasees similarly release the Bankruptcy Estate (along with the Trustee and his counsel) from any and all potential or actual claims, causes of action, derivative claims, and claims for attorneys' fees and costs, which they now hold (if any), or ever have held, whether at law or in equity, *except for* the Bank's POC (including all amendments), which shall specifically survive this release. It is the intent of the Parties that the Bank's $4,377,597.10 claim against the Bankruptcy Estate, as evidenced by the Bank's POC, survives this release. The term "Bank Releasees" specifically includes the Bank's predecessors-in-interest on the Loan (including the Note and the Deed of Trust).

13.    **Mutual Limited Release of Debtor**. On the Effective Date, after the sale of property to Type P Mgmt is consummated, the Bankruptcy Estate and the Trustee absolutely and forever releases and acquits Debtor from any and all remaining potential or actual claims, causes of action, derivative claims, and claims for attorneys' fees and costs, which the Trustee and Bankruptcy Estate may still retain against Debtor by operation of law (i.e., non-saleable claims) after the sale to Type P Mgmt of all other property of the Bankruptcy Estate (except for the Liquidated Assets and the SF Claim). On the Effective Date, the Debtor releases the Bankruptcy Estate (along with the Trustee and his counsel) from any and all potential or actual claims, causes of action, derivative claims, and claims for attorneys' fees and costs, which she now holds (if any), or ever has held, whether at law or in equity. Notwithstanding anything herein to the contrary, the releases in this section are effective only if the Debtor's original signed waiver of discharge is provided to the Trustee prior to the hearing on the Motion to Approve, as contemplated in Section 7 above.

14.    **Mutual Limited Release of Nellya and Valery**. On the Effective Date, after the sale of property to Type P Mgmt is consummated, the Bankruptcy Estate and the Trustee absolutely and forever release and acquit Nellya and Valery from any and all remaining potential or actual claims, including, but not limited to, fraudulent transfer claims under the Bankruptcy Code or the Uniform Fraudulent Transfer Act under NRS Chapter 112, and the avoidance thereof under 11 U.S.C. § 550, causes of action, derivative claims, and claims for attorneys' fees and costs, which the Trustee and Bankruptcy Estate may still retain against Nellya and Valery by operation of law (i.e., non-saleable claims) after the sale to Type P Mgmt

of all other property of the Bankruptcy Estate (except for the Liquidated Assets and the SF Claim). On the Effective Date, Nellya and Valery release the Bankruptcy Estate (along with the Trustee and his counsel) from any and all potential or actual claims, causes of action, derivative claims, and claims for attorneys' fees and costs, which they now hold (if any), or ever have held, whether at law or in equity.

15. **Effect of Limited Releases**. When they become effective, the limited releases found in Sections 11, 12, 13, and 14 above shall not: (i) release any term of this Agreement or any affirmative obligations of any Party contained herein; or (ii) release or limit any future ability or right of any Party to enforce this Agreement.

16. **Not a General Release**. Notwithstanding anything to the contrary contained in this Agreement, all Parties understand and agree that the Bankruptcy Estate is not releasing any claims that it may have against any person or entity, other than the limited releases identified above. Type P Mgmt is purchasing all such claims, and may pursue those claims in the place and stead of the Trustee, in Type P Mgmt's sole discretion and own expense.

17. **Attorneys' Fees**. With respect to all matters in the Bankruptcy Case, each Party shall bear its own attorneys' fees and costs.

18. **Governing Law; Jurisdiction**. This Agreement shall be governed by and construed in accordance with the laws of the State of Nevada. The U.S. Bankruptcy Court, District of Nevada shall retain jurisdiction over performance of, enforcement of, or any disputes arising from or related to, this Agreement.

19. **Authority**. Each Party hereby represents, warrants and covenants that the undersigned signatories for such Party have the full legal right, power and authority to bind that Party.

20. **Representation**. Each of the Parties represent that they have received independent legal advice, or have had the opportunity to receive independent legal advice, with respect to the terms of and advisability of executing this Agreement.

21. **Severability**. This Agreement shall be enforced to the maximum extent permitted by law. In the event that any one or more of the phrases, sentences, sections, or paragraphs contained in this Agreement shall be declared invalid or unenforceable by order, decree or judgment of any court having competent jurisdiction, or shall be or become invalid or unenforceable by virtue of any applicable law, the remainder of this Agreement shall be construed as if such phrases, sentences, sections, paragraphs or sections had not been inserted except when such construction shall constitute a substantial deviation from the general intent and purposes of the Parties as reflected in this Agreement. In the event any material or substantive terms are revised, deleted or replaced, then all Parties to this Agreement may agree to such alterations but, failing an agreement of all parties to such alterations, then this Agreement shall fail and become null and void.

Settlement Agreement - Page | 14

22. **Entire Agreement**. This Agreement embodies the entire agreement and understanding by and between these three groups (each, a "*Group*"): (i) the Bankruptcy Estate and the Trustee; (ii) the Bank; and (iii) (collectively as a group) Laroque, the Buyers, the Debtor, and the Insiders. This Agreement supersedes any and all prior or concurrent agreements, understandings, statements, assurances, assumptions, premises, promises, agreements, discussions or representations, oral or written, relating to the foregoing matters, including oral agreements or representations, if any. No Group has made any representations upon which any other Group has relied that are not contained in this Agreement relating to the foregoing matters. No Group is relying on an unstated assumption, premise or condition not contained in this Agreement relating to the foregoing matters.

23. **No Modification, Waiver, or Amendment**. No modification, waiver, or amendment of any of the terms of this Agreement shall be valid unless in writing and executed by all Parties and approved by the Bankruptcy Court. No waiver of any breach hereof or default hereunder shall be deemed a waiver of any subsequent breach or default of the same or similar or dissimilar nature. No course of dealing or course of conduct shall be effective to amend, modify or change any provision of this Agreement.

24. **Counterparts**. The Parties agree that this Agreement may be executed in counterparts, and may furthermore be executed by a Party on a scan of a counterpart executed by another Party. The Parties agree to cause their counsel to retain the originals of signed counterparts until 15 days after the Effective Date, after which they may be disposed of without notice.

25. **Assignment**. No Party other than the Bank and the Buyers may transfer or assign any of its rights, remedies or obligations under this Agreement. The Buyers may freely assign their rights hereunder, but must do so prior to the hearing on the Motion to Approve and provide notice by email to the Trustee (and his counsel) of doing so. After the Effective Date and the consummation of the respective sales of the assets, the Buyers may freely assign their interest in any or all Purchased Assets to any person or entity, without notice to any Party hereunder.

26. **Successors**. This Agreement shall be binding upon and inure to the benefit of the Parties and to their successors-in-interest. In particular, all terms of this Agreement shall be binding, in perpetuity, upon any successor-in-interest to the Bank for the Loan (inclusive of the Note, Deed of Trust, and all related loan documents).

27. **Further Assurances**. The Parties shall take, or cause to be taken, all actions and shall do, or cause to be done, all things necessary, proper or advisable to consummate each of the agreements, promises, covenants, and obligations of such Party under this Agreement.

28. **No Third Party Beneficiaries**. This Agreement shall not confer any rights or remedies on any person or entity other than the Parties and their respective successors and assigns.

Settlement Agreement - Page | 15

# # # # #

***AGREED:***

**THE BANKRUPTCY ESTATE OF ALLA V KOSOVA:**

Brian D. Shapiro, *in his capacity as Chapter 7 Trustee of the Bankruptcy Estate of Alla V Kosova, Nevada Bankruptcy Case No. 16-11907-led*

**DEBTOR:**

_____

Alla V. Kosova, *an individual, and debtor in Nevada Bankruptcy Case No. 16-11907-led*

**TKSC, LLC, a Nevada limited-liability company:**

By: _____
    Alla V. Kosova, *member*

**DATKSC, LLC, a Nevada limited-liability company:**

By: _____
    Alla V. Kosova, *member*

**RARE FINDS, LLC, a Nevada limited-liability company:**

By: _____
    Alla V. Kosova, *member*

**RARE FINDS, LLC, a Texas limited-liability company:**

By: _____
    Alla V. Kosova, *member*

Settlement Agreement -  Page | 16

# # # # #

***AGREED:***

**THE BANKRUPTCY ESTATE OF ALLA V KOSOVA:**

_____

Brian D. Shapiro, *in his capacity as Chapter 7 Trustee of the Bankruptcy Estate of Alla V Kosova, Nevada Bankruptcy Case No. 16-11907-led*

**DEBTOR:**

*Alla V. Kosova*
_____
Alla V. Kosova, *an individual, and debtor in Nevada Bankruptcy Case No. 16-11907-led*

**TKSC, LLC, a Nevada limited-liability company:**

By:     *Alla V. Kosova*
        _____
        Alla V. Kosova, *member*

**DATKSC, LLC, a Nevada limited-liability company:**

By:     *Alla V. Kosova*
        _____
        Alla V. Kosova, *member*

**RARE FINDS, LLC, a Nevada limited-liability company:**

By:     *Alla V. Kosova*
        _____
        Alla V. Kosova, *member*

**RARE FINDS, LLC, a Texas limited-liability company:**

By:     *Alla V. Kosova*
        _____
        Alla V. Kosova, *member*

Settlement Agreement -  Page | 16

**DEBTOR'S PARENTS (individually and on behalf of all businesses that either or both of them are members of, majority owners of, directors of, or otherwise control :**

_____          _____
Nellya Volostnykh                                    Valery Volostnykh

**SCOTT LAROQUE:**

_____
Scott Laroque, _an individual_

**LFF HOLDINGS GROUP, LTD., a Texas corporation**

By:    _____
      Scott Laroque, _President_

**NV CASA DOMAIN, L.L.C., a Texas limited-liability company**

By:    _____
      Scott Laroque, _President_

**TYPE P MANAGEMENT, L.L.C., a Texas limited-liability company**

By:    _____
      Scott Laroque, _President_

**INDYMAC VENTURE, LLC, a Delaware limited-liability company**

By:    CIT Bank, N.A.
Its:   Servicer

      By:    _Jianie Caldwell_____
      Title: _Director_____
      Its:   _N/A_____

Settlement Agreement -  Page | 17

**DEBTOR'S PARENTS (individually and on behalf of all businesses that either or both of them are members of, majority owners of, directors of, or otherwise control :**

_____          _____
Nellya Volostnykh                              Valery Volostnykh


**SCOTT LAROQUE:**

_Scott Laroque, an individual_


**LFF HOLDINGS GROUP, LTD., a Texas corporation**

By: _Scott Laroque, President_


**NV CASA DOMAIN, L.L.C., a Texas limited-liability company**

By: _Scott Laroque, President_


**TYPE P MANAGEMENT, L.L.C., a Texas limited-liability company**

By: _Scott Laroque, President_


**INDYMAC VENTURE, LLC, a Delaware limited-liability company**

By:    CIT Bank, N.A.
Its:    Servicer

    By: _____

    Title: _____

    Its: _____


Settlement Agreement - Page | 17

**DEBTOR'S PARENTS** (individually and on behalf of all businesses that either or both of them are members of, majority owners of, directors of, or otherwise control :

_Nellya A. V_        _Valery Volostnykh_

Nellya Volostnykh             Valery Volostnykh

**SCOTT LAROQUE:**

_____

Scott Laroque, *an individual*

**LFF HOLDINGS GROUP, LTD., a Texas corporation**

By: _____

Scott Laroque, *President*

**NV CASA DOMAIN, L.L.C., a Texas limited-liability company**

By: _____

Scott Laroque, *President*

**TYPE P MANAGEMENT, L.L.C., a Texas limited-liability company**

By: _____

Scott Laroque, *President*

**INDYMAC VENTURE, LLC, a Delaware limited-liability company**

By:    CIT Bank, N.A.
Its:    Servicer

     By: _____

     Title: _____

     Its: _____

# EXHIBIT A:

## Form of

## QUITCLAIM DEED

APN: 190-07-513-001

Return document and mail tax statements to:

    NV Casa Domain, L.L.C.
    3502 Paesanos Parkway, Suite 100
    Shavano Park, TX 78231

# QUITCLAIM DEED

THIS INDENTURE WITNESSETH: That first party

    **BANKRUPTCY ESTATE OF ALLA V. KOSOVA**, Nevada bankruptcy case no. 16-11907-led

does hereby convey, release, and quitclaim to:

    **NV CASA DOMAIN, L.L.C.**, a Texas limited liability company

the real property situated in the County of Clark, State of Nevada, described as follows:

    LOT SEVENTEEN (17) IN BLOCK ONE (1) OF AMENDED PLAT OF A PORTION
    OF ANTHEM COUNTRY CLUB PARCEL 32, AS SHOWN BY MAP THEREOF ON
    FILE IN BOOK 87 OF PLATS, PAGE 31, IN THE OFFICE OF THE COUNTY
    RECORDER OF CLARK COUNTY, NEVADA.

and commonly known as 11 Anthem Pointe Court, Henderson Nevada 89052.

Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in any way appertaining.  Subject to: property taxes, liens, conditions, covenants, restrictions, reservations, rights, rights of way, and easements now of record.

By: _____
    Brian D. Shapiro, *Authorized Signatory*

STATE OF NEVADA    )
COUNTY OF CLARK    )

This instrument was acknowledged before me

on _____, 2016, by: <u>Brian D. Shapiro</u>.

_____
NOTARY PUBLIC

# EXHIBIT B:

# Form of

# ASSIGNMENT OF CLAIM

# ASSIGNMENT OF CLAIMS

FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which are hereby acknowledged, Brian D. Shapiro, the Chapter 7 Trustee (in such capacity, "Trustee" or "Assignor") for the Bankruptcy Estate of Alla V. Kosova (Nevada Bankruptcy Case no. 16-11907-led), does herby sell, transfer, convey and assign unto Type P Management, L.L.C., a Texas limited liability company ("Type P Mgmt") all of Assignor's right title and interest in and to any and all claims, demands, causes of action arising within, out of, or connected in any way with the Plaintiff's complaint (as amended) in the construction defect lawsuit known as case no. A-15-723888-D pending before the Eighth Judicial District Court, Clark County, Nevada (the "Lawsuit").

This Assignment is executed and given pursuant to the certain Sale and Settlement Agreement by and among the Assignor, Type P Mgmt, and the additional signatories thereto.

The assignment made by the Trustee in this Assignment of Claims is made without warranty or representation with respect to the validity or collectability of the claims asserted in the Lawsuit.

Dated this _____ day of November, 2016.

Assignor:

_____

Brian D. Shapiro, *in his capacity as Chapter 7 Trustee of the Bankruptcy Estate of Alla V Kosova, Nevada Bankruptcy Case No. 16-11907-led*

# EXHIBIT C:

## Form of

## RECONVEYANCE OF DOT

APN: 190-07-513-001

WHEN RECORDED MAIL TO:

NBS Default Services, LLC
301 E. Ocean Blvd. Suite 1720
Long Beach, CA 90802

# FULL RECONVEYANCE

Property Address: 11 Anthem Pointe Court, Henderson Nevada 89052

NBS Default Services, LLC, Trustee under that certain Deed of Trust executed by DANNY J. WARTENBERG AND ALLA V. WARTENBERG, HUSBAND AND WIFE AS JOINT TENANTS, Trustors, recorded on August 31, 2005 in Book 20050831 as Document No. 0006411 of Official Records in the office of the County Recorder of Clark County, State of Nevada, having been requested by the holder of the obligation secured by said Deed of Trust, to reconvey the estate granted to trustee under said Deed of Trust, DOES HEREBY RECONVEY to the person or persons legally entitled thereto, without warranty, all the estate, title, and interest now held by Trustee under said Deed of Trust.

TRUSTEE: NBS Default Services, LLC

By: _____
       Kim Coker

STATE OF CALIFORNIA          )
COUNTY OF LOS ANGELES        )

On _____, before me, _____ Notary Public, personally appeared Kim Coker, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature^) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
NOTARY PUBLIC

# EXHIBIT D:


## Form of

## WAIVER OF DISCHARGE

ROBERT E. ATKINSON, ESQ., Bar No. 9958
Email: robert@nv-lawfirm.com
**ATKINSON LAW ASSOCIATES LTD.**
8965 S Eastern Ave, Suite 260
Las Vegas, NV 89123
Telephone: (702) 614-0600
Facsimile: (702) 614-0600
*Attorney for Brian D. Shapiro, Trustee*

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>ALLA V KOSOVA,<br><br>Debtor. | Case No. 16-11907-led<br>Chapter 7<br><br>**DEBTOR ALLA V. KOSOVA'S**<br>**WAIVER OF DISCHARGE**<br>**PURSUANT TO 11 U.S.C. §727(a)(10)** |

ALLA V. KOSOVA, being duly sworn, deposes and says:

    1.    I am the debtor in this bankruptcy case.

    2.    Pursuant to 11 U.S.C. §727(a)(10), I am hereby waiving my discharge. I am doing so voluntarily, and in accordance with the terms and conditions of a certain Sale and Settlement Agreement (Exhibit 1 to DE # ____), which I signed of my own free will.

    3.    I understand that this waiver means that I will not receive a discharge in this bankruptcy case. I make this waiver knowingly, having had the opportunity to discuss and consult with my counsel the implications of this waiver and a denial of discharge.

*Further your affiant sayeth naught.*

_____
Alla V. Kosova, *Debtor*

STATE OF TEXAS     )
COUNTY OF TRAVIS    )

This affidavit was acknowledged before me on _____, 2016 by ALLA V. KOSOVA.

_____
NOTARY PUBLIC